**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| **KEITH FRALEY** | ) | |
| | ) | **Civil Action File No.:** |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **MOREHOUSE COLLEGE** | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>VERIFIED COMPLAINT FOR EQUITABLE RELIEF</u>

Plaintiff, **<u>Keith Fraley</u> ("Mr. Fraley" / "Plaintiff")**, by and through undersigned counsel, files this Complaint, alleging violation of his due process rights by Defendant Morehouse College ("the university" / "Defendant" / "Defendant Morehouse"), while seeking equitable relief in the form of: (1) a Temporary Restraining Order (TRO); (2) injunctive relief; and (3) Declaratory Judgment.

Mr. Fraley states the following:

## **INTRODUCTION**

Mr. Fraley's Fifth (5th) Amendment rights meant nothing to Morehouse, an institution that knew Mr. Fraley had ongoing parallel criminal proceedings regarding a rape charge, yet, denied his request to stay his university disciplinary hearing on the same issue, thereby converting the entire university disciplinary hearing into a

quasi-criminal proceeding because of the criminal implications of Mr. Fraley's testimony. On top of that, the university's investigation of the rape allegation against Mr. Fraley was far from impartial, as evidenced by facts such as patent violations of its own governing Title IX procedures, procedures that created due process protections for Mr. Fraley. The university also refused to apply the same evidentiary standards and conclusions to identical evidence that applied to both Mr. Fraley and the alleged victim.

The principal focal point of the hearing was the concept of affirmative consent, but Morehouse's Title IX procedures and policies failed to define this critical concept and thus Mr. Fraley challenges this undefined word—that played the central role in the determination of his guilt—as void for vagueness. In fact, because the term <u>affirmative consent</u> is undefined, that reality left the door open for the panel to assert bias against Mr. Fraley in the form of both an unequal and speculative assessment of impairment, where both parties ingested marijuana but only Plaintiff was held responsible for assessing capacity.

Regarding the alleged victim, this Court should be aware of the following, *inter alia*;

1. The alleged victim admitted that she began smoking marijuana with a friend of Mr. Fraley and that they invited Mr. Fraley to smoke with them;

2. The alleged victim admitted that she went to Mr. Fraley's dorm room, voluntarily;

3. The alleged victim admitted that she permitted Mr. Fraley to perform oral sex on her and that he never tried to have penal penetration;

4. The alleged victim admitted that she never performed oral sex on him;

5. The alleged victim admitted that she stayed with Mr. Fraley until about 6:00 a.m. the next morning;

6. The alleged victim admitted that while she was with Mr. Fraley:

   a. Mr. Fraley never prevented her from leaving;

   b. Mr. Fraley never threatened or coerced her to stay;

   c. Mr. Fraley never attempted to stop her from leaving;

   d. Mr. Fraley left the room at one point and she stayed in the room.

7. The alleged victim admitted that, after leaving Mr. Fraley's on-campus housing, she did not allege rape or report any wrongdoing immediately.

8. Only after talking to her "friends" did the alleged victim start claiming that she had been sexually assaulted and then subsequently filed a complaint against Mr. Fraley with Morehouse College.

Moreover, upon information and belief, the officials conducting the investigation did not receive annual training related to "domestic violence, dating violence, sexual assault, stalking, and how to conduct an investigation and hearing

process that protects the safety of victims and promotes accountability." 20 U.S.C.S. § 1092.  Even Defendant's own Appellate Officer concluded that Morehouse's multi-year suspension was out of line with the facts of the case.

As a result of the violations of law and procedures, Mr. Fraley has been, and remains, barred from his education, branded internally as having committed "rape" and "sexual assault," and placed at risk of prejudice in criminal proceedings by an internal record created under a reduced evidentiary standard and deficient process.

## JURISDICTION AND VENUE

### 1.

This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and the laws of the United States.  Federal question jurisdiction exists under 28 U.S.C. § 1331.

### 2.

This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and its inherent equitable powers, including Fed. R. Civ. P. 65.

### 3.

The Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

4.

Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is located in this District and a substantial part of the events or omissions giving rise to the claims occurred at Morehouse College in Atlanta, Georgia.

**PARTIES**

5.

**Plaintiff Keith Fraley** ("Plaintiff" or "Mr. Fraley") is a citizen of Georgia and, at all relevant times, was enrolled as a student at Morehouse College.

6.

**Defendant Morehouse College** ("Defendant", "Morehouse", "the College" or "the university") is a private, federally funded institution of higher education located in Atlanta, Georgia, and is a recipient of federal financial assistance, making it subject to Title IX. Undria Stalling is authorized to receive service on behalf of Defendant Morehouse College and her address is: 830 Westview Drive, SW, Atlanta, Georgia 30314.

# FACTUAL ALLEGATIONS

## A. The Parties and the Underlying Incident

7.

During his freshman year at Morehouse, on or about April 9–10, 2024, Plaintiff and the alleged victim, Lanai Barrett, a student at Spelman College, socialized on the Morehouse campus.

8.

Ms. Barrett first went to the room of a Morehouse student, Mr. Daye, in Brazeal Residential House ("Brazeal"). She and Mr. Daye then invited Plaintiff to join them in Mr. Daye's room. The three socialized and smoked marijuana.

9.

After some time, the alleged victim and Plaintiff became affectionate. Mr. Daye asked them to continue their interaction elsewhere, and the alleged victim voluntarily accompanied Plaintiff to Plaintiff's dorm room in Brazeal.

10.

The alleged victim remained in Plaintiff's room until approximately 6:00–6:30 a.m. when she left to attend her morning class at Spelman.

11.

Over the course of the night, Plaintiff and the alleged victim engaged in physical intimacy, including kissing and Plaintiff performing oral sex on the alleged

victim. No penile-vaginal intercourse occurred. It is undisputed that Plaintiff did not engage in intercourse with that alleged victim when she told him not to proceed to intercourse.

12.

Plaintiff testified that he repeatedly checked in with the alleged victim, asking whether she was "okay" as part of his understanding of ensuring comfort and consent, and that she did not tell him "no" or attempt to leave during the encounter.

13.

The alleged victim did not allege that Plaintiff threatened, restrained, or forced her to remain in the room, and she acknowledged opportunities to leave.

14.

Later that day, after discussing the encounter with friends, the alleged victim reported the incident to Morehouse's Title IX office and underwent an exam at Grady Hospital.

**B. The Title IX Complaint, Investigation, and Emergency Removal**

15.

On or about April 22, 2024, Morehouse's Office of Title IX, Ethics, and Compliance Programs received a formal Title IX complaint from Ms. Barrett alleging non-consensual touching and sexual conduct in Plaintiff's room on or about April 9–10, 2024.

16.

The College placed Plaintiff on "emergency removal" status effective April 30, 2024, removing him from campus housing and limiting his presence on campus to academic activities only. He was barred from extracurricular and social activities and lost scholarship and housing opportunities.

17.

The investigation was ultimately assigned to Attorney Nancy Sprattlin, who issued an Investigative Report on or about August 25, 2025.

18.

The Investigative Report did not make findings of responsibility. It listed "facts relevant to substantiate allegations" and "relevant facts – unsubstantiated allegations."

19.

During this period, Plaintiff continued his studies, maintained a strong academic record, and represented Morehouse in its Study Abroad Program in China, and was selected again for future representation.

C.  **On-going concurrent criminal charges and the refusal to stay university Proceedings**

20.

Plaintiff also faced overlapping and parallel criminal charges under Georgia law based on the same factual allegations, meaning anything he said in the Title IX process could be used against him in a criminal context.

21.

Mr. Fraley's counsel requested a stay of the Title IX proceedings until the criminal case had been resolved based on the fact that Mr. Fraley's testimony would implicate the criminal charges against him. But, Morehouse stated it would proceed with or without him.

**D. The Live Hearing and Panel Determination**

22.

On September 25–26, 2025, Morehouse convened a live Title IX hearing before a three-member panel:

- Dr. Youdlyne Renard (Academic Advisor);

- Mr. Darius Thomas (Associate Director of Title IX, Ethics, and Compliance) – Hearing Chair; and

- Mr. Marcus Washington (Senior Community Director / Director of Housing).

23.

There was zero indication that any of these officials received annual training as required by the law such as annual training in "domestic violence, dating violence, sexual assault, and stalking and how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability." 20 U.S.C.S. § 1092.

24.

Both parties and their advisors attended. The panel questioned both parties and allowed cross-examination by the parties' advisors.

E. **Procedural Irregularities**

25.

Multiple procedural irregularities occurred at this hearing, many of which the Appellate Officer later acknowledged or discussed, including:

26.

a. Advisor Objections Prohibited: Although Morehouse's Title IX Procedures and the Hearing Notice state that a party's advisor may "object briefly" to the other advisor's questions, the Hearing Chair **prohibited** both advisors from making objections during cross-examination on the ground that "this is not a court of law."

27.

b. Plaintiff Forced to Act as His Own Counsel: Because the governing procedures were violated regarding objections, Mr. Fraley was, in practice, required

to navigate adversarial questioning and protect his own rights while also serving as a witness, without the benefit of active representation—despite overlapping criminal risk.

28.

c. Racially and Gender-Coded Questioning: The alleged victim's advisor questioned Plaintiff extensively about his height, weight, and athletic status, emphasizing his identity as a large, athletic Black male--**despite the alleged victim's acknowledgment that Mr. Fraley did not threaten or force her to stay**. These questions reinforced—bias—stereotypes of Black men as physically intimidating and aggressive, without clear probative value.

29.

d. Prejudicial Comment About Text Messages: Panelist Marcus Washington suggested that he was "not certain whether or not any text messages were deleted" from Plaintiff's communications with the alleged victim—without any evidence of deletion—casting unjustified suspicion on Plaintiff's integrity and evidence.

30.

e. Use of Uncorroborated Medical Testimony: The panel permitted the alleged victim to testify about alleged medical effects and injuries, and admitted medical documentation, but no medical professional testified. Plaintiff had no opportunity to cross-examine a provider or challenge interpretations of the medical records.

31.

Using the College's Title IX definitions derived from the FBI's Uniform Crime Reporting (NIBRS) standards, on October 6, 2025, the Hearing Panel issued a written Determination, finding Plaintiff responsible for:

- Sexual Assault – Rape; and

- Sexual Assault – Fondling.

32.

The panel concluded, under a preponderance standard, that Plaintiff engaged in multiple sexual activities with the alleged victim, initiated all activity, and that, based heavily on his own testimony, he "should have known" she was impaired by marijuana and therefore unable to provide valid consent.

33.

The assessment regarding the alleged victim's marijuana use and its application was both an unequal and speculative assessment of impairment, where both parties consumed marijuana but only Plaintiff **was held responsible for assessing capacity**;

34.

The Determination imposed the following sanctions:

35.

a. Suspension from Morehouse until Fall 2028 (a three-year suspension starting in Fall 2025);

36.

b. Permanent ban from on-campus housing upon re-enrollment;

37.

c. Mandatory Title IX training upon re-enrollment;

38.

d. A three-page essay on "affirmative consent," the effects of controlled substances, and how Plaintiff should have applied that understanding; and

39.

e. A 45-minute educational presentation to freshmen on affirmative consent and the use of alcohol and marijuana.

40.

The Determination relied predominantly on Plaintiff's own statements regarding:

- the amount of marijuana consumed ("a lot" / two blunts);

- his description of the alleged victim as louder and slurring words;

- his failure to obtain explicit verbal consent; and

- his reliance on her prior behavior as indicative of consent.

41.

The Determination did not clearly identify any consistent, explicit verbal refusal by the alleged victim during the encounter, nor did it reconcile her remaining voluntarily in Plaintiff's room until the following morning.

**E. Plaintiff's Appeal and Grounds**

42.

On October 9, 2025, Plaintiff timely filed a 24-page appeal on the grounds of:

a. Procedural irregularity;

b. Conflict of interest or bias; and

c. Inappropriate sanctions.

43.

Plaintiff's appeal identified, among other issues:

44.

- the College's failure to identify the Appellate Officer at the time of filing and lack of transparency about the appellate process;

45.

- the Hearing Chair's prohibition on advisor objections, **contrary** to the written Procedures and Hearing Notice;

46.

- unequal and speculative assessment of impairment, where both parties ingested marijuana but only Plaintiff was held responsible for assessing capacity;

47.

- Permitting racially-coded and gender biased questioning, highlighting Plaintiff's physical stature and athleticism;

48.

- the Director of Housing's dual role as panelist in a case involving dorm-policy enforcement failures;

49.

- the panel's acceptance of uncorroborated medical testimony without a medical witness;

50.

- the College's use of criminal labels ("rape," "sexual assault") under federal definitions without regard to Georgia criminal law or meaningful procedural protections;

51.

- the undefined "affirmative consent" standard; and

52.

- the three-year suspension as arbitrary and disproportionate, especially given Plaintiff's clean subsequent record and the timing aligning with the alleged victim's anticipated graduation.

53.

Plaintiff also argued that the College's narrow view of the advisor's role, its refusal to adapt procedures to overlapping criminal exposure, and its use of quasi-criminal labels under a preponderance standard together create a framework incompatible with due process and Title IX's requirement of "prompt and equitable" resolution.

## F. The Appellate Process and Appellate Officer's Decision

54.

The Morehouse Title IX Procedures state that appeals are to be decided by the Vice President for Student Affairs or designee.

55.

At the time of Plaintiff's appeal, Morehouse did not have a Vice President for Student Affairs and the College lacked any written procedure for determining conflicts of interest or designating an alternate appellate authority.

56.

The individual who would ordinarily fulfill the role described in the handbook is the Dean of Students; however, Morehouse determined the Dean of Students had a conflict of interest because, in his normal administrative capacity, he had previously contacted Plaintiff and his family regarding the emergency removal process, which did not constitute an actual conflict.

57.

The College eventually designated LaNell Shirley as the Appellate Officer and, on October 16, 2025, informed the parties of her selection and background. LaNell Shirley is a Title IX and Civil Rights Investigator with Grand River Solutions, who primarily serves universities within the University of California system, including UCLA and USC.

58.

The appellate process is expressly confined by the College to:

- a non-de novo review;

- evaluation only of whether the stated appeal grounds are met; and

- application of the College's own policy and procedures, not state or federal law.

59.

In her November 7, 2025, Appellate Decision, Ms. Shirley:

60.

a. Upheld the findings of responsibility for Sexual Assault – Rape and Sexual Assault – Fondling;

61.

b. Upheld all sanctions except the length of suspension;

62.

c. Reduced the suspension from three years (Fall 2025–Fall 2028) to two years (Fall 2025–Fall 2027), while acknowledging Plaintiff had already been on emergency removal since April 30, 2024; and

63.

d. Stated repeatedly that it was "beyond the scope" of her role to determine whether Morehouse violated federal or state law, limiting her review to internal policy compliance.

64.

With respect to advisor objections, the Appellate Officer expressly found:

- The written Title IX Procedures do allow advisors to make brief objections during cross-examination;

- The Hearing Chair did not allow either party's advisor to object and insisted "objections" were not part of the process; and

- This "may constitute procedural irregularity" because it contradicts both the written Procedures and the Hearing Notice.

65.

Nonetheless, the Appellate Officer dismissed this irregularity as non-prejudicial, asserting that the panel relied mainly on its own questioning rather than cross-examination.

66.

Regarding appellate authority and conflict of interest, the Appellate Officer admitted:

- The Procedures are "silent" on what constitutes a conflict of interest or how such conflicts are handled;

- The "designee" language was used to justify reassigning appellate authority; and

- The College's handling of the VP's conflict and the transition to a new Appellate Officer was not guided by any published standard.

67.

On the consent standard, the Appellate Officer acknowledged that the College's policy defines "consent" only as "knowing, voluntary, and clear permission by word or action," and does not specifically define "affirmative consent," even

though Plaintiff was found responsible for failing to obtain "affirmative consent" and
was required to write an essay on that concept as a sanction.

68.

The Appellate Officer further stated that:

- The College's Title IX process is an internal, administrative, policy-based
  process,

- It is not intended to adjudicate criminal liability,

- It is not governed by state criminal definitions or constitutional evidentiary
  standards, and

- the College's Title IX definitions of "rape" and "sexual assault" do not
  require penile penetration as under Georgia law, and findings "under Title
  IX do not equate to criminal guilt."

69.

Despite this, the College:

- uses the same criminal terminology;

- labels Plaintiff internally as having committed "rape" and "sexual assault";
  and

- maintains a record that can foreseeably be sought in criminal proceedings,
  all based on a preponderance standard and limited procedural protections.

70.

The Appellate Officer agreed that the three-year suspension was "disproportionate" given Plaintiff's emergency removal since April 30, 2024, and the absence of further violations, and reduced the suspension to two years (Fall 2025–Fall 2027).

71.

Even with the reduction, Plaintiff will have been effectively stripped of normal enrollment, housing, extracurricular participation, and campus life for over three and a half years.

**G. Ongoing Harm and Irreparable Injury**

72.

Plaintiff currently remains suspended from Morehouse through Fall 2027, prohibited from enrolling as a normal student, living in campus housing, or participating fully in campus life.

73.

The College's findings and records brand Plaintiff as having committed "rape" and "sexual assault", labels which carry significant stigma and risk of misuse by other institutions, employers, and potentially in criminal proceedings.

74.

Plaintiff has already suffered:

- loss of on-campus housing;

- loss of scholarship and financial support tied to enrollment;

- disruption of his academic progress and planned study abroad;

- psychological distress and reputational harm; and

- difficulty transferring to other institutions given the pending disciplinary record.

75.

Monetary damages cannot fully redress the loss of time, opportunities, and the permanent reputational stain of these findings. Without injunctive relief, Plaintiff's education and future opportunities will continue to be irreparably harmed.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF TITLE IX (20 U.S.C. § 1681 et seq.)**
**SEX BIAS AND INEQUITABLE GRIEVANCE PROCEDURE**
76.

Plaintiff realleges and incorporates paragraphs 1–75 as if fully set forth herein.

77.

Title IX and its implementing regulations, including 34 C.F.R. § 106.45, require recipients of federal financial assistance to adopt and apply prompt, equitable, and impartial grievance procedures, to treat complainants ("alleged

victims") and respondents equitably, and to ensure decision-makers are free from bias and conflicts of interest.

78.

1. Morehouse's handling of Plaintiff's case violated these obligations in multiple ways, including but not limited to:

79.

a) Prohibiting advisors from raising objections during cross-examination despite written policy allowing them raise objections, thereby depriving Plaintiff of meaningful representation and parity in the adversarial process;

80.

b) Applying an "affirmative consent" standard, which was undefined. The vagueness of this standard caused outcomes such as an asymmetrical impairment standard, under which the alleged victim's marijuana use was treated as negating her capacity to consent while Plaintiff's identical use was ignored, on the theory that "one's own impairment is not a defense," effectively placing a heightened, **gender-based burden on Plaintiff.  The vagueness of** "affirmative consent" in the policy renders it incapable of being used as the operative standard for liability and punishment.

81.

c) Permitting biased sex- and race-coded questioning about Plaintiff's physical size and athletic status, consistent with stereotypes of Black men as physically domineering, while restricting or narrowing contextual inquiry about the alleged victim.

82.

d) Allowing a Director of Housing—with an institutional stake in dorm policy enforcement and liability—to serve as a voting panelist in a case arising directly from dormitory policy failure;

83.

e) Relying on speculative and untested medical assertions without subjecting any medical provider to cross-examination; and

84.

f) Imposing disproportionate sanctions (originally a three-year suspension, later reduced to two years) without any published sanctioning matrix or proportionality standard.

85.

Taken together, these defects show that Plaintiff did not receive an equitable process as required by Title IX, and that the grievance procedure, as written and as applied, is biased, opaque, and structurally stacked against male respondents.

86.

Plaintiff has suffered and will continue to suffer educational, economic, and reputational harm as a direct and proximate result of Defendant's Title IX violations.

87.

Plaintiff is entitled to declaratory relief, injunctive relief, and damages under Title IX.

### COUNT II
### VIOLATION OF TITLE IX – FAILURE TO MAINTAIN CLEAR, FAIR, AND LEGALLY SOUND POLICIES
### (VOID FOR VAGUENESS / ARBITRARY APPLICATION)

88.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein and all paragraphs deemed relevant by this Court.

89.

Title IX regulations require that institutions give students clear notice of what conduct is prohibited and maintain procedures that are reasonably predictable and non-arbitrary.

90.

Morehouse failed to do so by:

a)  Using undefined terms such as "affirmative consent" in adjudications and sanctions, without providing a clear, operational definition in its policy;

91.

b) Maintaining Title IX definitions of "rape" and "sexual assault" that differ materially from Georgia's criminal statutes, while simultaneously using the same stigmatizing terminology in its internal findings and records;

92.

c) Explicitly disclaiming any responsibility to consider whether its Title IX process complies with state or federal law, or whether it creates unfair criminal exposure, as the Appellate Officer stated it is beyond her scope to consider legal violations;

93.

d) Operating an appellate system where the designated appellate officer position does not exist, and where the procedures are silent on conflicts of interest and the replacement process, leading to ad hoc, arbitrary and capricious, undocumented decisions about appellate authority; and

94.

e) Imposing sanctions in the absence of any published sanctioning matrix or guidelines, resulting in arbitrary and shifting penalties.

95.

The undefined and overbroad standards applied to Plaintiff deprived him of adequate notice and allowed the College to determine, after the fact, that his conduct violated "affirmative consent" principles that were never clearly articulated.

96.

The vague and unconstrained nature of the policies and sanctioning framework violates basic principles of fair notice and non-arbitrary decision-making embedded in Title IX's requirement of "prompt and equitable" procedures.

97.

Plaintiff is entitled to declaratory and injunctive relief declaring the challenged policies and practices unlawful and preventing their application to him.

## COUNT III
## BREACH OF CONTRACT / PROMISSORY ESTOPPEL
## (GEORGIA LAW)

98.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein and all paragraphs deemed relevant by this Court.

99.

The relationship between Plaintiff and Morehouse is contractual in nature.

100.

The Student Handbook, Title IX Policy, Title IX Procedures, and related representations constitute binding promises and terms of that contractual relationship.

101.

Morehouse expressly promises, among other things, to:

a) follow its own published Title IX procedures;

b) provide an impartial, fair process;

c) permit advisors to accompany and support parties, including during cross-examination; and

d) utilize the Vice President for Student Affairs or designee as Appellate Officer.

102.

Plaintiff enrolled and continued at Morehouse in reasonable reliance on these representations.

103.

Morehouse breached these promises by:

a) contradicting its own procedure that allows advisors to raise objections during cross-examination;

104.

b) failing to maintain a functioning VP for Student Affairs while not clearly defining or publishing a process to designate a conflict-free appellate officer;

105.

e) improvising appellate conflict-of-interest decisions without any written standard;

106.

f) allowing panelists with institutional conflicts (e.g., Director of Housing) to sit in judgment; and

107.

g) deviating from its stated timelines and structures in a way that advantaged the institution and disadvantaged Plaintiff (including a delay in decision and compressed appeal time).

108.

 As a direct and proximate result of these breaches, Plaintiff has suffered educational, financial, and reputational damages.

109.

In the alternative, to the extent any specific term is deemed not strictly contractual, Plaintiff reasonably relied on Morehouse's promises and representations to his detriment, giving rise to promissory estoppel.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(U.S.C. §§ 2201–2202)**

110.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein and all paragraphs deemed relevant by this Court.

111.

An actual, justiciable controversy exists between Plaintiff and Morehouse regarding the legality and validity of:

a) the findings of responsibility for Sexual Assault – Rape and Sexual Assault – Fondling;

b) the continued suspension and related sanctions; and

c) the procedures and policies applied to Plaintiff's case.

112.

Plaintiff seeks a judicial declaration that:

a. The Title IX proceedings and appellate review were conducted in a manner that violated Title IX and applicable law;

113.

b.  The findings of responsibility and sanctions, including the two-year

suspension (Fall 2025–Fall 2027), are null and void; and

114.

c.  Morehouse's challenged policies and practices are unlawful as applied

to Plaintiff and may not be enforced against him.

115.

d.  Such a declaration will resolve the controversy and clarify the parties'

rights and obligations under federal law.

## COUNT V
## VIOLATION OF PROCEDURAL DUE PROCESS AND EQUAL PROTECTION RIGHTS
(U.S. Const. Amend. XIV; Fundamental Fairness Principles; Title IX, 20 U.S.C. § 1681 et seq.)

116.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

if fully set forth herein and all paragraphs deemed relevant by this Court.

117.

Defendant Morehouse College, as a recipient of federal financial assistance

and an institution subject to Title IX, is obligated to conduct disciplinary proceedings

that are fundamentally fair, consistent with the guarantees of due process, and free

from gender bias or discriminatory treatment in violation of the Equal Protection Clause.

118.

Defendant failed to meet those obligations by utilizing hearing panel members and appellate officers who are not legally trained yet are empowered to interpret and apply complex legal standards—including definitions of "rape," "sexual assault," and "affirmative consent"—that carry serious criminal implications and reputational consequences. The delegation of quasi-criminal determinations to untrained decision-makers without clear evidentiary or procedural guidance constitutes a deprivation of procedural due process.

119.

Plaintiff is simultaneously facing criminal charges based on the same alleged conduct that formed the basis of the College's Title IX proceeding.

120.

The College's disciplinary process, however, provides no mechanism to safeguard his constitutional presumption of innocence, nor does it prevent compelled self-incrimination. Plaintiff was forced to defend himself in a proceeding that required him to make statements or risk adverse inferences, thereby prejudicing his ability to defend himself in pending or potential criminal litigation.

121.

The College's application of conflicting legal standards further violated due process. Georgia's criminal statutes require proof of specific elements such as penile penetration to constitute rape while the College's policy substitutes a broader "federal" definition derived from FBI Uniform Crime Reporting standards. The use of inconsistent, hybrid legal definitions without adequate notice deprived Plaintiff of the ability to understand the nature of the charges against him or the standard by which his conduct would be judged.

122.

Defendant's process also failed to maintain consistency between the lower "preponderance of the evidence" standard and the quasi-criminal nature of the allegations, imposing severe sanctions akin to criminal penalties—including a multi-year suspension and permanent stigmatization—without the procedural protections guaranteed by the Constitution.

123.

Defendant further violated Plaintiff's equal-protection rights by applying gender-based assumptions that placed a disproportionate burden on him, as the male respondent, to discern the complainant's capacity and intent, while disregarding his own impairment and the shared responsibility of both parties. The process was

conducted and adjudicated under biased presumptions that favored complainants and disfavored male respondents.

124.

Defendant's cumulative failures—including the use of untrained adjudicators, the lack of procedural safeguards for respondents facing concurrent criminal jeopardy, the absence of clear standards of proof, and the arbitrary interpretation of sexual-misconduct definitions—constitute violations of Plaintiff's rights to due process, equal protection, and fundamental fairness under the Fourteenth Amendment and Title IX.

125.

As a result of these actions, Plaintiff has suffered irreparable harm, including suspension from enrollment, loss of educational opportunity, reputational injury, and ongoing prejudice in related criminal proceedings.

126.

Plaintiff therefore seeks declaratory and injunctive relief to restrain enforcement of the disciplinary determination, to prohibit Defendant from continuing to apply unconstitutional and discriminatory procedures, and to restore Plaintiff to his academic standing pending the final resolution of this action.

## COUNT VI
## INJUNCTIVE RELIEF
## (TRO, PRELIMINARY, AND PERMANENT INJUNCTION)

### 127.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein and all paragraphs deemed relevant by this Court.

### 128.

Plaintiff seeks immediate temporary and preliminary injunctive relief under Fed. R. Civ. P. 65 and permanent injunctive relief after adjudication on the merits.

### 129.

Based on the facts to support this Court, this court should issue a TRO and preliminary injunction.

### 130.

The request does not have money as its basis; the harm is on-going; and Mr. Fraley is likely to succeed on the merits.

## COUNT VII

## NEGLIGENCE

### 131.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein and all paragraphs deemed relevant by this Court.

132.

By requiring freshmen to live on campus and controlling dormitory access, Morehouse owed Plaintiff a duty of reasonable care to enforce its own dormitory, safety, and visitation policies in a manner designed to protect students.

133.

Morehouse breached that duty by:

- allowing a non-resident student to access Brazeal Residential House without proper sign-in;

- permitting overnight visitation in violation of its own rules;

- failing to adequately supervise and / or monitor dormitory access; and

- tolerating a dorm environment involving marijuana use and overnight visitors that created foreseeable risks of misunderstanding, allegations, and harm.

134.

These failures directly contributed to the circumstances under which allegations arose and to the Title IX process that followed.

135.

Morehouse's subsequent decision to place the entire burden on Plaintiff, while ignoring its own failures, exacerbated his harm.

136.

Mr. Fraley is entitled to compensatory damages for the harm caused by Morehouse's negligence.

137.

Based on the facts incorporated to support this count, the Defendant has acted negligently by, *inter alia*, violating clearly established rules designed to protect the Plaintiff's due process rights, and it was reasonably foreseeable that violating these rules would cause harm to the Plaintiff by robbing him of his due process rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Keith Fraley respectfully requests that the Court:

1. Issue a Temporary Restraining Order and Preliminary Injunction enjoining Morehouse from enforcing Plaintiff's suspension and all related sanctions, and ordering his immediate reinstatement to full student status pending resolution of this action;

2. Declare that Morehouse's Title IX proceedings and appellate review, as applied to Plaintiff, violated Title IX and applicable law;

3. Declare that the findings of responsibility for Sexual Assault – Rape and Sexual Assault – Fondling, and the resulting sanctions, are null and void;

4. Enjoin Morehouse permanently from enforcing those findings and sanctions, and order expungement of all records indicating that Plaintiff was found responsible for such violations;

5. Order reinstatement of Plaintiff as a student in good standing, restoration of eligibility for housing, financial aid, and programs for which he would otherwise qualify, and permission to complete his education at Morehouse;

6. Require Morehouse to review and revise its Title IX policies and procedures as applied to Plaintiff to:

   a) define consent standards with sufficient clarity;

   b) ensure advisor participation consistent with federal regulations;

   c) establish clear appellate authority and conflict-of-interest standards; and

   d) prevent biased and arbitrary questioning and decision-making;

7. Award Plaintiff compensatory damages in an amount to be determined at trial for educational, financial, and reputational harms;

8. Compensatory damages in an amount to be determined at trial for the emotional, educational, reputational, and economic harm caused by Defendant's negligent failure to enforce its own dormitory, safety, and visitation policies, and its negligent handling of the circumstances that gave rise to the allegations and subsequent Title IX process;

9. All special damages proven at trial, including losses arising from Defendant's failure to maintain a reasonably safe residential environment and failure to follow mandatory procedures designed to protect students, including those safeguarding due process rights;

10.  Award Plaintiff reasonable attorney's fees and costs, to the extent recoverable, and all taxable costs of suit; and

11.  Award such other and further legal and equitable relief as the Court deems just and proper.

### FURTHER DECLARANT KEITH FRALEY SAYETH NOT

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:** 11/20/2025

**By DECLARANT:**

*Keith F*
ID mERaM9yQckfQqFXoUDszPZkz

**KEITH FRALEY**

Respectfully Submitted: November 20, 2025,

/s/ **ADELINE N. ALEXANDER**
Adeline N. Alexander, Esq.
Georgia Bar No. 392081

**ALEXANDER LAW PRACTICE GROUP, LLC**
5771 Johnson Street, #5385
Hollywood, Florida 33083
Tel: (786) 436-1985
Email: adeline@alexanderlawpg.com
*Counsel for Keith Fraley*

/s/ **MARIO B. WILLIAMS**
Mario B. Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**

**MARIO B. WILLIAMS, ESQUIRE**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: (470) 257-2485; Fax: (470) 660-8523
Email: mwilliams@hdrattorneys.com
***Counsel for Keith Fraley***

# eSignature Details

| | |
|---|---|
| **Signer ID:** | **mERaM9yQckfQqFXoUDszPZkz** |
| Signed by: | Keith Fraley |
| Sent to email: | keithfraley59@gmail.com |
| IP Address: | 73.237.200.175 |
| Signed at: | Nov 20 2025, 7:38 am EST |